This action was instituted to recover damages because of an injury alleged to have been received while in the employ of the defendant and through its negligence.
In his complaint the plaintiff alleges that he was injured at 2:40 o'clock of the afternoon of Saturday, 2 January, 1909, while cleaning, with a rag in his left hand, a certain part of a tentering machine in the cotton mill of the defendant at Gibsonville while the machine was in motion, and that he was at that time about 14 years of age. The complaint contains four specifications of negligence, to wit:
1. Failure to instruct.
2. That the work assigned to plaintiff "was entirely too heavy."
3. That defendant failed to furnish certain appliances, to wit, brushes, in general and approved use for cleaning machinery; and
4. That the defendant required the plaintiff to clean said tentering machine while running.
The defendant in its answer denied each allegation of negligence and pleaded contributory negligence, assumption of risk, and the three years statute of limitations.
At the close of the plaintiff's testimony the defendant moved that the action be dismissed and for judgment as in the case of nonsuit. This motion was overruled, and defendant excepted.
The defendant offered no testimony, but prayed the court in writing in apt time "to charge the jury to answer the first issue `No.'" The court refused to charge as requested, and defendant excepted.
The defendant in apt time in writing further prayed the (471) court "to charge the jury, if they answer the first issue `Yes,' to answer the second issue `Yes.'" The court refused to charge as requested, and the defendant excepted.
The evidence of the plaintiff tended to prove that at the time of his injury he was 14 years old lacking twenty days; that he had, prior to his injury, worked for four or five years in various cotton mills and had done quite a variety of work, beginning with "picking quills" and ending with the operation of the tentering machine on which he was injured; that he had for several months worked in the room in which the tentering machine was, operating the stitching machine and glossers, and that he was assigned to operate this particular machine "about eight or nine or ten days" before his injury; that prior to two weeks before his injury the defendant company had provided its employees with brushes with which to clean machines, but that at that time these brushes were taken away and they were given rags and waste instead; that when brushes were used for cleaning, his hands would not be nearer then 2 feet to the machine.
The plaintiff testified, among other things, as follows: *Page 379 
"It was my duty to clean the machine everywhere. If I didn't, I had to go back over it. There were no instructions given me at the time I was assigned to work on this machine as to how to clean it and operate it. Up until Saturday before I was hurt on the following Saturday, I had a brush to clean the machine with. It was a brush made out of a picker stick, or anything you could get hold of, so that it was about 2 1/2 or 3 feet long, made out of this warp they make cloth out of. You got the brush and cut notches in the stick and tied this piece of warp on this stick. The handle was from 2 1/2 to 3 feet long. When you were cleaning the machine with a brush it was necessary for you to put your hands about 2 feet from the parts. Mr. Theodore Allred took these brushes and burned them up. When he came around and took the brushes I asked him what I must clean up with, and he says, `You will have to clean up the best way you can.' I says, `I am going to swipe me a brush somewhere and use that,' and he says, `You can't use it if you stay in here; you will have to get out of here if you use a brush. You can clean up with a rag the best you can, or anything that you don't have to stick in there that will break the gears. After they took (472) up the brushes I had nothing except rags to clean up with. Neither Mr. Allred nor any one else warned me as to the danger in cleaning this machine with a rag. I was hurt about two weeks after these brushes had been taken up. I was on my knees wiping this here piece of frame that goes under the frame that holds the other frame to it. The piece that fastens across there. I was wiping this rod with this rag. I don't have a brush so as to stand outside. I had to get on my knees and wipe with that rag. As I went to pull my hand out the wind of this here chain blew the rag and it caught in the sharp-pointed teeth and jerked my hand right under this here wheel. The machine was running. The reason I did not stop the machine to clean it up was simply because they would not let me stop the machine. The reason why I did not stop the machine to clean it up was because, when the cloth would get pushed on me on a Saturday evening, I had to run this machine. They gave us three-quarters of an hour to stop the machine and clean it up, fan off."
Q. Tell who gave you the instructions, who said you had to run it and clean it? A. Both of them gave me instructions, Mr. Charley Stout and Mr. Theodore Allred, both gave me instructions.
Q. State what instructions they gave you. A. Told me I could not stop the machine.
Q. About cleaning up while it was running or not running? A. Yes, sir; could not stop the machine during working hours, and if I wanted to clean it I would have to wait until this three-quarters of an hour came and then clean it, or clean it during spare times when I got a *Page 380 
chance, or stay after working hours and get no pay for it. It would take about one hour and fifteen minutes to clean it like they required. I had to sweep up the floor after I had cleaned up, after Mr. Theodore Allred inspected the machine.
"I said that both Stout and Allred told me not to stop the machine in order to clean it up. I do not know at what hour the machine stopped on Saturday. I know they gave us three-quarters of an hour to stop the machine and sweep up. I do not remember whether it was 5 (473) o'clock or 10 minutes after 6, when the mill closed down on Monday, Tuesday, Wednesday, Thursday, and Friday. I think it was 6 o'clock the year round. On Saturday I think it was 4. I think the machinery shut down in the finishing department on Saturday afternoon about a quarter past 3. It was not a quarter to 3. That is one thing I know. It shut down for us to line the machines up. He started around just as quick as he started to line up the machines; went around and inspected them, and we started to sweep the floor. That time was not given us in which to clean the machines; it was given us in which to line up the machines and sweep up. It was not given us expressly for cleaning the machine. I knew that if I got my hand caught in a moving chain I would get hurt, but you see I was trying to keep out of it. I was trying to prevent an injury to my person. I was doing what they required me to do, cleaning the machine. No instructions were given to me as to cleaning that machine. I knew I had to clean it, and clean it clean. That is all I knew. I knew how to do it with brushes. I didn't know how to do it unless I got down with the rag. I saw the chain there and saw the wheel there, and I knew if my hand was carried by the chain against the wheel that it would hurt me. A lot of the machine was nowhere near the chain and wheel, that is, a lot of the frame. I can't tell how much. I didn't understand the nature and mechanism of the machine before I was assigned to work on it. I knew nothing about it until he told me to run it. I knew how to keep the cloth on the teeth; knew nothing more about it. I knew I was likely to be hurt anywhere in there. I don't know that I knew it was dangerous cleaning that part; no, sir, not in that way. If I had had a brush it would not have been dangerous at all. The way I was cleaning it then I didn't know that I was liable to get hurt right at the present time. If I had, I would not have cleaned it. The chains were where I could see them underneath. I was kneeling down on both knees and the moving wheel and chain were immediately before my eyes. The wind in this chain could have blown the rag and jerked my hand. The rag was tight in my hand, gripped tight. I had it in the palm of my hand. My hand was *Page 381 
caught before I knew it. The chain jerked my hand. I knew if (474) my hand got in there it would get hurt, but I didn't intend for it to get in there."
W. E. Marshall testified for the plaintiff as follows:
"I live at Durham. I lived at Gibsonville in the winter of 1909. I lived there five years and seven months. I was master mechanic of the Minneola Manufacturing Company, the defendant. I was in their employ at the time Paul Breeden got hurt. That machine is something like 30 or 40 feet long, and the machine is to stretch the goods, to weave them all the same number of inches, have all the same length. Sprocket and chain. Chain continuous, one on each side, and as the carriage strikes the chain on each side the chain runs continuous, with a row of pins about like clothes pins or a little larger, something like 3/8 of an inch long, or half an inch. Space of about 3/16 of an inch apart, which sets them pretty thick. As these chains revolve they catch the goods here and take it out a certain distance, and the chain widens out. That machine has a frame on each side of it. It is supported by shafts and connections. At the opposite end some rollers which take the goods off and fold it out. Driver on the machine at the opposite corner. Has a loose and tight pulley, and a short shaft drives that pinion into a large gear which drives the machine, operates the whole machine. Up at this end back here where the operator sits the goods is taken off on the table behind, and that goes over a reel, you might call it, and goes down under the platform that he sits on and comes up and enters the chain right here. There it first strikes it. That chain is open, exposed on the machine most of the way around, except a small piece right here (indicating) where the goods come over. The chain is open all the way around. The chain came here and came around the sprocket. The chain was exposed until it strikes that sprocket, which pulls it around. The wheel was more than 3 or 4 inches from the side of the carriage, which reverses backward and forward on the frame of the machine. The wheel reaches to the front of the machine, all except a little shield there to stop the goods, pull the goods off until it strikes the proper place along the chain. In cleaning the machine it is necessary for one to get down under the machine when he is (475) cleaning it with a rag. If one had a brush as was described to clean the machine and those parts about this sprocket wheel, he could do that without getting down under the machine, and could do it without placing his hand in close proximity to the chain and wheels. I worked for this defendant five years and seven months. I had been there something like three years before the injury. I know that this defendant company used brushes to clean their machinery up until about two weeks previous to the time of the injury to Breeden, and I know that *Page 382 
this defendant took the brushes up about two weeks previous to this injury and they burned them up. I worked at the mills at Mayodan in Rockingham County; at Fries, Virginia; at Spray and Gibsonville. The Minneola was the last I worked for. I had worked for the others before. Three of the mills that I had worked for used brushes. One in the spinning-room didn't use long-handled brushes, used short bristle brushes."
The jury returned the following verdict:
1. Was the plaintiff injured by the negligence of the defendant, as alleged in the complaint? Answer: Yes.
2. Did the plaintiff by his own negligence contribute to his injury, as alleged in defendant's answer? Answer: No.
3. What damage, if any, is plaintiff entitled to recover? Answer: Seventeen hundred and fifty dollars ($1,750).
Judgment in favor of the plaintiff upon the verdict, and defendant appealed, assigning as error:
1. The refusal of the court to allow its motion that the action be dismissed and for judgment as in the case of nonsuit.
2. The refusal of the court to give defendant's prayer "to charge the jury to answer the first issue `No.'"
3. The refusal by the court to give defendant's prayer "to charge the jury, if they answer the first issue `Yes,' to answer the second issue `Yes.'"
After stating the case: There is no controversy as to the law governing this case, the defendant admitting that it was its duty to furnish the plaintiff with suitable and reasonably safe appliances, and to instruct him as to his duties and as to the dangers in operating the machine at which he was working when he was injured.
The contention of the defendant is that, as the plaintiff admits that the mill was stopped on Saturdays for the purpose of cleaning the machines, and that he had other opportunities to do so during the week when the machine was not in motion, the only reasonable deduction from the whole evidence is that the plaintiff was instructed to clean the machine when at rest, and not to do so when in motion, and that if this is true, the rag furnished the plaintiff was a reasonable and safe appliance for cleaning the machine not in motion; that there were no need of instruction, because there was no danger if he performed his duties *Page 383 
as he was told to do, and that the real cause of the injury to the plaintiff was his disobedience of the order not to clean the machine when in motion.
The learned counsel for the defendant urges this contention in a strong, forceful argument, which convinces us that there was good reason for asking the jury to adopt his view; but it does not satisfy us that there was no other reasonable inference to be drawn from the evidence, and if there is evidence of negligence as the cause of the injury, the question is one for the jury, unless the evidence of the plaintiff establishes contributory negligence on his part.
The position of the defendant is predicated upon the allegation that the plaintiff was directed to clean the machine when at rest, and not to do so when in motion.
No witness testified that this instruction or order was given, and the plaintiff testified, "It was my duty to clean the machine everywhere. There were no instructions given me at the time I was assigned to work on the machine as to how to clean it and operate it. No instructions were given to me as to cleaning that machine. Neither Mr. Allred nor any one else instructed me as to the danger in cleaning this machine with a rag." If the jury accepted this evidence, they must have found that the plaintiff was performing his duty when he was injured and that he had not been instructed to stop the machine to clean it.
Again: "I said that both Stout and Allred told me not to (477) stop the machine to clean it up." "The reason I did not stop the machine to clean it up was simply because they would not let me stop the machine."
When the defendant took the brushes from the plaintiff which had been used in cleaning the machine, and in the use of which the hands of the plaintiff would not have been nearer to the machine than 2 feet, the plaintiff said to the foreman: "I am going to swipe me a brush somewhere and use that," and he said: "You can't use it if you stay in here; you will have to get out of here if you use a brush. You can clean up with a rag the best you can, or anything that you don't have to stick in there that will break the gears."
Were not the jury justified in inferring from this evidence that the defendant expected the plaintiff to clean the machine while in motion, as otherwise the use of a brush would not break the gears?
There is also evidence that the brush was taken from the plaintiff on Saturday before he was injured, and that prior to that time the machine was cleaned with the brush while in motion, and as the plaintiff, a boy 14 years of age, had been instructed not to stop the machine, it was not unreasonable for him to conclude that he was to clean the machine in motion, in the absence of specific instructions, which he says were not given him. *Page 384 
The excerpts from the evidence are subject to the criticism that they are taken from different parts of the testimony, and that all associated evidence is not presented, but while this is true, nothing is omitted which is necessarily in conflict with that quoted.
We are, therefore, of opinion that there is evidence that the plaintiff was directed to clean the machine in motion; that the rag given him was not a safe appliance for this purpose; that the defendant failed to instruct the plaintiff as to the operation of the machine and its dangers, and that the failure of duty on the part of the defendant was the cause of the plaintiff's injury; and further, that it is not necessarily (478) inferred from the evidence of the plaintiff that he was acting in disobedience of orders.
It follows, therefore, that there is no error in overruling the motion for nonsuit or in refusing to give the instructions prayed for.
No error.
Cited: Lynch v. R. R., 164 N.C. 252.